UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN A. RIVERA,<br><br>    Claimant,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Respondent. | Civil No. 08-2281 (JAF) |

**OPINION AND ORDER**

Claimant, Juan A. Rivera, petitions this court under 42 U.S.C. § 405(g) to review the decision of Respondent, the Commissioner of Social Security ("Commissioner"), denying disability benefits to Claimant (Docket Nos. 1; 14); Commissioner opposes (Docket Nos. 9; 15).

**I.**

**Factual and Procedural History**

We derive the following facts from the parties' filings (Docket Nos. 1; 9; 14; 15) and the record in this case ("R.") (Docket No. 6). Claimant, a high-school graduate, was born on October 23, 1953. (R. at 59.) He worked as a computer operator from April 1989 to July 1990 and as a sales associate from October 1994 to September 1995, and again from October 1998 to February 2004. (R. at 106.) He has also worked as a materials handler. (R. at 136, 431.) Claimant ceased working on February 6, 2004, citing ailments due to herniated vertebral discs, diabetes, major depression, Hepatitis C, fibrosis of the liver, and panic attacks. (R. at 87.)

Claimant applied for disability insurance benefits on July 7, 2004 (R. at 59-62), which Commissioner denied initially on January 25, 2005 (R. at 48), and again on reconsideration on May 15, 2005 (R. at 56). On May 17, 2007, Claimant appeared with counsel before Administrative Law Judge ("ALJ") Gilbert Rodríguez to contest Commissioner's determination. (R. at 427-59.) The ALJ issued a decision on October 31, 2007, upholding Commissioner's finding of non-disability. (R. at 14-32.)

To reach his decision, the ALJ consulted medical evidence provided by Dr. Henry González, a gastrointestinal specialist; Dr. Angelo Rosado, an endocrinologist; Dr. William Matos, a rheumatologist; Dr. Héctor Rodríguez ("Rodríguez"), Claimant's treating psychiatrist; Dr. Reinaldo Kianes, a consultative psychiatrist; and various medical experts employed by the Puerto Rico State Insurance Fund. (Id.) Claimant visited Rodríguez monthly for psychiatric treatment beginning in January 3, 1997, until April 26, 2006. (R. at 410, 415.) Claimant later resumed his visits in May 2007. (R. at 410.)

On August 4, 2004, Rodríguez reported that Claimant's psychiatric symptoms, including mood swings, anxiety attacks, and obsessive-compulsive disorder, began sometime in 1996. (R. at 353-56.) Rodríguez noted that he was capable of traveling alone; manifested an appropriate attitude and behavior; spoke coherently in a normal tone of voice; exhibited no delusions despite his depression and obsessive thoughts; was oriented in the three spheres of person, place and time; possessed adequate attention during the interview; displayed no deterioration in intellect; had adequate insight; benefitted from treatment with Zoloft, an

Civil No. 08-2281 (JAF)                                                                                                              -3-

antidepressant medication; and was capable of handling funds. However, Rodríguez also reported that Claimant lived at home with his parents; had recently attacked his father due to low tolerance for stress; had a sad mood; stated that he had many problems with concentration; rarely ventured outside the house except to attend meetings with Narcotics Anonymous; had experienced panic attacks; and suffered from worsened depression and anxiety due to the failure of his treatment for Hepatitis C. Rodríguez diagnosed Claimant with major depressive disorder, recurrent, severe but without psychotic traits; obsessive compulsive disorder; and unspecified mood disorder. Rodríguez also opined that Claimant's prognosis was poor and that his "mood [was] not adequate to engage in sustained activities," and "believe[d] that he is totally and permanently disabled both emotionally and physically to engage in daily work activities."

On April 13, 2005, Rodríguez submitted to Commissioner his progress notes from Claimant's clinical visits from August 25, 2004, to February 21, 2005, asserting that "[n]o positive change has occurred in the patient's condition since 8/25/2004 up to now," and that Claimant "is still in a depressive phase and is not able to engage in work functions." (R. at 358-68.) The notes show that Claimant consistently exhibited lethargy, sadness, and depression, but no signs of risk of harm to himself or others. He remained under medication throughout this period, and his progress note on December 15, 2004, indicated that "[e]verything's fine."

Rodríguez also submitted a "Mental Residual Functional Capacity ['RFC'] Assessment" on a form published by the Social Security Administration which he had completed on April 6, 2005, covering the period from December 1, 2004, through May 15, 2005. (R. at 411-14.)

According to Rodríguez' checked boxes, Claimant exhibited moderate limitations in his abilities to "understand and remember detailed instructions;" "carry out detailed instructions;" "sustain an ordinary routine without special supervision;" "work in coordination with or proximity to others without being distracted by them;" "make simple work-related decisions;" "interact appropriately with the general public;" "accept instructions and respond appropriately to criticism from supervisors;" "get along with coworkers or peers without distracting them or exhibiting behavioral extremes;" "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;" "respond appropriately to changes in the work setting;" "be aware of normal hazards and take appropriate precautions;" and "set realistic goals or make plans independently of others." Rodríguez also ticked boxes to note that Claimant displayed marked limitations in his abilities to "maintain attention and concentration for extended periods;" "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Furthermore, Rodríguez added in writing that Claimant had a history of mood swings, anxiety that was consistent with obsessive-compulsive disorder, and a worsening emotional condition due to unfavorable outcomes from his treatment for Hepatitis C. Rodríguez ended again with the remark that Claimant was in a state of depression that "disable[d] him for any work activity." Lastly, on May 15, 2007, Rodríguez

wrote a letter to certify that Claimant had resumed treatment that day after having foregone treatment since April 26, 2006. (R. at 410.)

Kianes, a consultative psychiatrist, made an independent examination of Claimant on September 23, 2004. (R. at 332-34.) Kianes reported that, although Claimant had received ambulatory psychiatric treatment since 1997, Claimant had no history of psychiatric hospitalization. As for daily activities, Kianes observed that Claimant was capable of taking care of personal needs, assisted with household chores, and went shopping, but spent most days at home in bed and had superficial relations with neighbors. As for Claimant's appearance and behavior, Kianes noted that Claimant arrived alone, had normal physical development, possessed good personal hygiene, cleanly dressed, made sporadic eye contact but was cooperative, had no tics in mannerism, possessed normal motor activity and gait, was alert, was in contact with reality, and understood questions addressed to him. Kianes remarked that Claimant produced spontaneous speech with a rapid flow and exhibited an adequate affect, but showed an anxious mood that was occasionally hostile. With respect to Claimant's thoughts, Kianes stated that Claimant exhibited no blocking, flight of ideas, suicidal or homicidal ideation, delusions, phobias, obsessive ideas, ideas of persecution; that Claimant was coherent, relevant, and logical; but that Claimant had to deal with multiple somatic complaints due to various physical conditions. Kianes reported that Claimant did not appear to suffer from perceptual disturbances; was well oriented in the three spheres; had fair judgment and insight; and had preserved recent, past, and remote memory. However, Kianes also observed that

Claimant had difficulty with immediate and short-term memory; could not concentrate on reciting the months of the year; asserted that both grapefruits and oranges are square; claimed to have difficulty with memories when asked the names of five towns; and asserted that he could not perform simple calculations. Kianes diagnosed Claimant with a mood disorder due to Hepatitis C and an adjustment disorder with anxious mood, and remarked that, based on Kianes' observations, Claimant was capable of handling funds.

In the course of Claimant's application for benefits, doctors employed by the State Insurance Fund also examined Claimant. Dr. Luis Vecchini submitted a report on November 24, 2004, that determined that Claimant exhibited affective disorders, specifically a mood disorder due to his physical condition, diminished concentration, and short-term memory. (R. at 385-98.) Vecchini rated Claimant's functional limitations, finding moderate functional limitations in restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace; and no limitations in terms of extended episodes of decompensation. Vecchini also appended a "Mental RFC Assessment," dated the same day. (R. at 399-402.) Vecchini reported moderate limitation in Claimant's abilities to "understand and remember detailed instructions;" "carry out detailed instructions;" "maintain attention and concentration for extended periods;" "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods;" "interact appropriately with the general public;" and "accept instructions and respond appropriately to criticism from supervisors." Vecchini noted no marked limitations in Claimant. Finally, Vecchini added in written remarks that Claimant exhibited "depression & diminished concentration & short term memory;" "is able to remember & carry out simple instructions but not complex ones;" "can maintain attention brief intervals;" and "can interact w/ supervisors."

Upon reviewing the record, Dr. Orlando Rebosedo, another consultative physician, opined on November 24, 2004, that neither the overall medical evidence nor the treating physician's opinions supported the alleged intensity of Claimant's condition. (R. at 382.) Rebosedo noted that "TP's [sic] own progress notes, as opposed to what he describes in his report" failed to support Rodríguez' conclusions (Id.) On May 6, 2005, Rebosedo reported, "Evidence in file fails supporting [sic] worsening of conds [sic]. Prior forms seems [sic] ready to be adopted." (Id.)

The record also includes two vocational expert reports. The first, dated January 19, 2005, concluded that Claimant was capable of working as a surveillance system monitor, a school-bus monitor, and a call-out operator. (R. at 136.) The second opinion, dated May 10, 2005, drew the same conclusion, but explicitly stated that Claimant had "marked limitations due to an emotional condition in areas such as: understanding and memory, sustain attention and persistence, social interaction and adaptation." (R. at 148.) Both opinions included codes corresponding to the respective vocational expert in place of their names. (R. at 136, 148.)

Civil No. 08-2281 (JAF) -8-

In his decision, the ALJ assessed the credibility of Claimant's allegations based on his appearance at the hearing and the aforementioned medical opinions. (R. at 29-31.) The ALJ noted that Claimant testified that he had suffered from migraine headaches and an emotional condition beginning around 1991 or 1993, sustained injuries from an automotive accident in March 2003, and suffered from hand and wrist pain and a diminished ability to grasp. (R. at 25.) The ALJ found that the totality of the evidence weighed against the alleged severity of Claimant's conditions. (R. at 29-31.) Citing the assessment of several vocational experts and the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ concluded that Claimant is capable of performing jobs that exist in significant numbers in the national economy and, hence, is not disabled. (R. at 31-32.)

On September 10, 2008, the Appeals Council declined to review the ALJ's decision. (R. at 7.) On November 7, 2008, Claimant filed the present petition in this court seeking review of the ALJ's decision. (Docket No. 1.) Commissioner filed a memorandum of law on April 29, 2009 (Docket No. 9), and Claimant filed his memorandum on June 8, 2009 (Docket No. 14), to which Commissioner responded on June 18, 2009 (Docket No. 15).

## II.

## Standard of Review

An individual is disabled under the Social Security Act ("the Act") if he is unable to do his prior work or, "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d).

Civil No. 08-2281 (JAF) -9-

The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted) (quoting Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

We must uphold Commissioner's decision if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). In reviewing a denial of benefits, the ALJ must consider all evidence in the record. 20 C.F.R. § 404.1520(a)(3) (2009). Credibility and "[c]onflicts in the evidence are . . . for the [ALJ] – rather than the courts – to resolve." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). We reverse the ALJ only if we find that he derived his decision "by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**III.**

**Analysis**

Alleging that the ALJ's decision was not based on substantial evidence, Claimant specifically argues that the ALJ (1) improperly discredited the medical opinion of Claimant's treating doctor and (2) consulted faulty assessments by vocational experts that were

unauthenticated and not based upon Claimant's true mental condition. (Docket No. 14.) We treat each contention in turn.

**A.    Medical Evidence by Treating Source**

Claimant maintains that the ALJ gave insufficient weight to the opinion of Rodríguez, who treated Claimant's mental illness. (Id.) Commissioner argues that the ALJ properly weighed Rodríguez' assessment against other medical evidence in the record. (Docket No. 15.)

Under the "treating physician rule," Commissioner must generally accord greater weight to the opinions of a claimant's treating sources than other sources because of the treating doctors' longitudinal perspective of the claimant's condition. 20 C.F.R. § 404.1527(d)(2). If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [Commissioner] will give it controlling weight." Id. Nevertheless, deference to the treating physician is not absolute: "A treating physician's conclusions regarding total disability may be rejected by [Commissioner] . . . when . . . contradictory medical advisor evidence appears in the record." Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 276 (1st Cir. 1988).

In the present case, there is ample evidence by consulting mental health experts that either differ from, or contradict, the opinion of Rodríguez, Claimant's treating psychiatrist. For instance, Vecchini's Mental RFC Assessment reported significantly-less severity in Claimant's limitations than Rodríguez' report, even though Vecchini's report predated Rodríguez' by only

a few months. (R. at 399-401, 411-14.) Even more salient is Rebosedo's determination that Rodríguez' own progress notes on Claimant contradicted his assessment of Claimant's mental functionality. (R. at 382.) Furthermore, Kianes' examination suggested that, while Claimant exhibited some antisocial traits and suffered from some deficiencies in memory, he was capable of handling personal funds and carrying out household chores. (R. at 332-34.)

Lastly, while Rodríguez believed that Claimant was disabled and unable to work (R. at 414), disability under the Act is a legal determination that is reserved to the ALJ, and medical experts are not qualified to render this ultimate legal conclusion. See Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003). Under the relevant regulations, a rating of extreme functional limitation in activities of daily living, social functioning, or maintenance of concentration, persistence, or pace, would render a claimant disabled. 20 C.F.R. § 1520a(c)(4). Similarly, four or more episodes of extended decompensation would also render a claimant disabled. Id. Vecchini reported only moderate limitation in the first three categories and no episodes of decompensation. (R. at 395.) Therefore, the ALJ properly weighed Rodríguez' opinions against countervailing medical opinions by other doctors to find that Claimant's mental limitations were not as severe as Rodríguez believed. See Keating, 848 F.2d at 276.

**B.    Vocational Experts**

Claimant also argues that the ALJ improperly relied on unauthenticated assessments by vocational experts who lacked the necessary evidence on Claimant's mental health to make proper evaluations. (Docket No. 14.) Commissioner contends that the vocational reports are

properly authenticated, and that the experts accounted for certain limitations in Claimant's mental capacity, even though their reports predated the ALJ's hearing. (Docket No. 15.)

Upon finding that a claimant is unable to return to his prior work, Commissioner bears the burden of proving that the claimant could perform other jobs in the national economy. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). Commissioner may meet this burden by relying on the testimony of vocational experts, usually offered in response to hypothetical medical conditions posed by the ALJ at a hearing. Id. "But in order for a vocational expert's [opinion] to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." Id. Where the vocational expert omits a significant functional limitation from his assumptions about the claimant's health, the ALJ may not rely on this expert's opinion. Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994).

In the instant case, the ALJ found that Claimant was unable to perform any past relevant work. (R. at 31.) The ALJ then consulted both the Grids and reports by vocational experts. (Id.) Both vocational reports included codes to identify the responsible experts. (R. at 136, 148.) Furthermore, while the vocational experts did not benefit from a hypothetical posed by the ALJ at a hearing, the second vocational report specifically accounted for marked limitations in Claimant's ability to understand and remember, sustain attention and persistence, and social interaction and adaptation. (R. at 148.) These assumptions correspond to the more severe Mental RFC Assessment of Rodríguez, dated April 6, 2005 (R. at 411-14), rather than the

Civil No. 08-2281 (JAF)                                                                                                          -13-

milder assessment of Vecchini from November 24, 2004 (R. at 399-402). Because the second vocational report was premised upon assumptions that were more severe than the ratings that the ALJ ultimately accepted, the ALJ properly relied on the report to conclude that Claimant was able to perform other work in the national economy and, hence, not disabled. Accordingly, we find that the ALJ's determination of Claimant's non-disability has support in substantial evidence and is, thus, conclusive. See 42 U.S.C. § 405(g).

## IV.

### Conclusion

For the reasons stated above, we hereby **AFFIRM** Commissioner's determination and **DENY** Claimant's petition for relief (Docket No. 1).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 8th day of January, 2010.

                                                              s/José Antonio Fusté
                                                              JOSE ANTONIO FUSTE
                                                              Chief U.S. District Judge